UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:08CV-105-H

LISA KAY HARRISON, et al.

PLAINTIFFS

V.

UNITED STATES DEPARTMENT OF THE ARMY, et al.                DEFENDANTS

**MEMORANDUM OPINION**

Plaintiffs CDH Preserve, LLC, Cathy L. Cunningham and Dennis L. Cunningham, (collectively "Plaintiffs"), seek reversal of a United States Department of the Army ("Army") finding that there was "no adverse effect" on certain historic properties when it allowed a 10.9 mile easement over the Fort Knox Military Reservation ("Fort Knox"). Plaintiffs assert that the Army, and Eric C. Schwartz, Colonel, United States Army, Fort Knox Garrison Commander (collectively, "Federal Defendants"), improperly limited the scope of their review when granting the easement to Defendants Louisville Gas & Electric Company and Kentucky Utilities Company ("Utility Defendants") for the purposes of building an electric transmission line. The Army undertook its review pursuant to the National Historic Preservation Act ("NHPA"), 16 U.S.C. § 470 *et seq*., and its implementing regulations at 36 C.F.R. Part 800.

The crux of Plaintiff's argument is that the Army wrongly limited its Section 106 review by defining the "undertaking" under the NHPA as the 10.9 mile portion of the transmission line crossing Fort Knox, rather than the Utility Defendants' entire 41.9 mile transmission line. The

project was approved by the Kentucky Public Service Commission ("PSC") in May 2006 and is

currently underway.[1]  All parties have moved for summary judgment.

Though the parties raise numerous issues in their motions, the Court will focus on two

questions: 1) whether Plaintiffs have standing and 2) whether the Army properly defined the

scope of the federal undertaking under Section 106 of the NHPA.  16 U.S.C. § 470 *et seq*.  The

Court's findings on those questions make an extended discussion of the other issues, including

judicial notice, mootness, final agency action and extra-record evidence, unnecessary.  For the

reasons that follow, the Court will sustain Utility Defendants' and Federal Defendants' motions

for summary judgment and dismiss the case.

## I.

The number of documents filed in this case is extensive; the administrative record spans

more than 1,200 pages.[2]  For purposes of clarity, the Court will briefly address the regulatory

framework before addressing specific facts of the case, which are largely undisputed by the

parties.

## A.

Section 106 of the National Historic Preservation Act requires federal entities to take into

account the effect of a proposed federal action on historic properties, including properties

eligible for or listed on the National Register of Historic Places ("National Register"). 16 U.S.C.

---

[1]  In fact, Utility Defendants argue Plaintiffs' claim is moot because construction of the transmission line is "90% complete," and request this Court to take judicial notice of that fact. Plaintiffs dispute the project is 90 percent complete. Because there is a dispute over the project's status and it is theoretically possible for Defendants to make some alterations to accommodate Plaintiffs even after the transmission line is built, this Court finds that the case is not moot.

[2] Plaintiffs also submitted, with the Court's approval, Extra-Record evidence. However, it is unnecessary to make the Extra-Record evidence a part of the official record on review.

2

§ 470f; *Narragansett Indian Tribe v. Warwick Sewer Auth.*, 334 F.3d 161, 166 (1st Cir. 2003). Compliance with NHPA is triggered whenever federal involvement is classified as a federal "undertaking."  *Id.*

The Advisory Council on Historic Preservation ("Advisory Council") has promulgated regulations that set forth the process for complying with Section 106 of the NHPA.  36 C.F.R. § 800.  The regulations define an undertaking as "a project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency, including those carried out by or on behalf of a Federal agency; those carried out with Federal financial assistance; and those requiring a Federal permit, license or approval."  36 C.F.R. § 800.16(y).  When a federal agency determines that its actions constitute a federal undertaking, the agency must identify the proper parties to engage in the review process, including the State Historic Preservation Officer ("SHPO") and any parties entitled to be consulting parties.  36 C.F.R. § 800.3.

Next, the agency identifies the relevant historic properties and determines whether they are eligible for or listed on the National Register.  36 C.F.R. § 800.4.  If there are historic properties in the "area of potential effect" ("APE") of the undertaking, the agency must determine whether they would be affected. The Advisory Council defines the APE as "the geographic area or areas within which an undertaking may directly or indirectly cause alterations in the character of historic properties, if any such properties exist."  36 C.F.R. 800.16(d). Further, an APE may be different from project to project, depending on the scale or nature of the undertaking and the types of effects a particular undertaking might have.  *Id.*  An APE review could lead to three possible findings: "no effect," "no adverse effect" or "adverse effect.  36 C.F.R. §§ 800.4(d), 800.5, 800.6.  Upon a finding of "no effect" or "no adverse effect" on

historic properties, the agency must notify the consulting parties and the SHPO. If the SHPO does not object, the agency's review is complete.  36 C.F.R. § 800.4(d)(1)(i).  If there is an objection, the agency either consults with the objecting party or refers the matter to the Advisory Council for review.  36 C.F.R. § 800.4(d)(ii).

If the agency, along with the SHPO and consulting parties does find adverse effects, it must work to resolve the effects, typically by executing a memorandum of agreement with the affected parties. 36 C.F.R. §§ 800.5, 800.6, 800.16.  It is this more extensive "adverse effects" review that the Plaintiffs allege Defendants should have undertaken here.

B.

Dennis and Cathy Cunningham (the "Cunninghams") are members of CDH Preserve, a Kentucky limited liability company that owns a 150-acre nature preserve[3] located at 2697 Bethlehem Academy Road in Cecilia, Kentucky.  The Cunninghams live on the CDH property, which is in the "immediate vicinity" of Bethlehem Academy, an historic property listed on the National Register of Historic Places.  Because Bethlehem Academy is listed on the National Register, it is protected by Section 106 of the National Historic Preservation Act.

In 2005, the Utility Defendants contacted the Army to request an easement through the Fort Knox Military Reserve ("Fort Knox") for the purpose of constructing an electric transmission line to connect LG&E's Jefferson County Mill Creek Generating Station to KU's Hardin County substation.  The Army had previously granted similar easements.[4]  The Utility

---

[3] Though Plaintiffs make some assertions about the wildlife living on their nature preserve, they bring this action solely under the National Historic Preservation Act, 16 U.S.C. § 470 *et seq.*, and not under the National Environmental Policy Act or other environmental statute.

[4] The Army has granted other utility easements to the Utility Defendants. The Federal Defendants assert that, except for limited sections of new right-of-way, the new easement runs parallel to the old lines in the same

4

Defendants assert that they initially considered two routes for the transmission line, one of which would cross Fort Knox and another that would avoid it.  The route that crossed Fort Knox required a 10.9 mile easement across the military reserve; the entire length of the proposed transmission line was 41.9 miles.

For the benefit of the Army, Utility Defendants hired private consultants to determine the impact of the proposed federal undertaking, including its impact on historic resources.  For the purposes of those investigations, the Army defined the "undertaking" as the 10.9 mile stretch of Fort Knox that the transmission line would cross.  It then determined the APE was the distance from which the transmission line could be seen from Fort Knox property, or 3,000 feet from the military reserve.  The consultants' final report addressing historic resources found that only one property within that range, Fort Duffield, was eligible for listing on the National Register.[5]  To accommodate it, the report recommended certain changes to the transmission line, including lowering the height of the poles.

In September 2005, the Army contacted the Kentucky SHPO and requested approval of its planned issuance of the easement. Over the next year, the Army and Utility Defendants provided reports to the SHPO and answered questions about the project.  Defendants explained that, other than approval of the easement across federal land, the project involved no federal control, funding or permits.  After receiving these assurances, the SHPO issued findings of "no adverse effect" and "no effect" on historical properties, based on the limited definition of the undertaking. The Army concurred with those findings.  In May 2006, the Kentucky Public

---

utility corridor.

[5] An earlier report identified a second historic resource that the Federal Defendants later determined was ineligible for listing on the National Register.

Service Commission approved the Utility Defendants' application for a certificate of convenience and necessity required to complete the transmission line.  In January 2008, the Army Corps of Engineers, which manages the land at Fort Knox for the Army, issued the relevant easements on the Army's behalf.[6]

Though Plaintiffs' property and nearby Bethlehem Academy are not within the area of potential effect of the "undertaking" as the Army defined it, a different portion of the 41.9 mile transmission line crosses Plaintiffs' property, and is within the "viewshed" of the Bethlehem Academy property. After the Kentucky PSC's approval of the project and Army's grant of the easements, Plaintiffs brought this action.

II.

The parties' briefs raise, but do not appear to completely resolve, the issue of Plaintiffs' standing, that is their right to have a court review the merits of a particular issue.  The requirement of standing arises from a concern for the limited role of courts in our society and a desire to have properly interested parties litigating in federal court. *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  Plaintiffs must meet the "case or controversy" requirement under Article III of the U.S. Constitution.  *Id.* at 498-99.  To meet the "case or controversy" requirement, Plaintiffs must (1) have suffered an actual, concrete and particularized "injury in fact" that (2) has a causal connection with Defendant's action and (3) is redressable in court.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Additionally, Plaintiffs must demonstrate prudential standing.  To do so, they must show that they fall within "the 'zone of interests' sought to be

---

[6]Utility Defendants argue that Plaintiffs do not challenge the final agency action, but instead challenge the process the Federal Defendants undertook. The Court finds the Plaintiffs' Complaint, even if technically deficient, is sufficient to state a claim for relief.

6

protected by the statutory provision whose violation forms the legal basis for [their] complaint." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990).

Neighboring landowners have standing to challenge the government's failure to follow statutorily prescribed procedures, such as those prescribed by the NHPA, "so long as this failure impairs a separate concrete interest of the Plaintiff." *Pye v. U.S*, 269 F.3d 459, 467 (4th Cir. 2001), citing *Lujan*, 504 U.S. 555, 573 at n. 7. Neighboring property owners concerned with the impact of a new development must show both the *Lujan* requirements for standing, and also that they fulfill the "zone of interest" test. See *Pye*, 269 F.3d at 470.

Those challenging procedural rights face a lower standing burden, because they can assert their rights "without meeting all the normal standards for redressability and immediacy." *Lujan*, 504 U.S. at 573 n. 7. Despite the relaxed standing requirements for those challenging procedural rights, a party asserting its procedural rights must still allege sufficient injury. See *Ctr. for Biological Diversity v. Lueckel*, 417 F.3d 532, 537. Here, the proposed transmission line does dissect Plaintiffs' land. But Plaintiffs, who bring their claim under the National Historic Preservation Act, do not appear to assert that the Act actually protects *their* land.[7] Instead, Plaintiffs allege injury to a *neighboring property*, Bethlehem Academy, which the NHPA does protect. Plaintiffs argue that Bethlehem Academy is injured because the transmission line running through Plaintiffs property is within the "viewshed" of the protected Academy, and thus the Academy will suffer an aesthetic injury. Plaintiffs' claim is, in turn, based on this aesthetic

---

[7] At least, this is what the briefs appear to show. Plaintiffs arguments on this point are somewhat unclear, and at times give the impression that the Bethlehem Academy site is the one burdened by the transmission line, or that Bethlehem Academy is part of Plaintiffs' land. The Federal Defendants dispute both points and assert that the transmission line crosses Plaintiffs' property, and not the Academy property. The Administrative Record appears to support Defendants' contention.

injury allegedly suffered by the Academy, which is not a party to this suit. This convoluted factual scenario is not present in the cases Plaintiffs cite.  Rather, the cases Plaintiffs rely upon for support involve scenarios where construction is occurring on neighboring property and it is within the *plaintiff's* viewshed. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 183 (2000); *Pye*, 269 F.3d at 470.

Plaintiffs' standing argument is further hindered by their vague description of the relationship between the Bethlehem Academy property, their property and the proposed location of the transmission line.[8]  Though it is possible that the broad language Plaintiffs cite in *Pye v. United States*,[9] a Fourth Circuit case, would allow them to assert standing for an aesthetic injury to their neighbor, they arguably have not met the more pertinent Sixth Circuit's standard for pleading standing. *Lueckel*, 417 F.3d at 537 ("The plaintiffs cannot carry their burden by generalized allegations. Because the plaintiffs standing was challenged in a motion for summary judgment, the plaintiffs must, in the words of Rule 56 Fed. R. Civ. P., 'set forth specific facts,' in affidavits or through other evidence demonstrating that each element of standing is satisfied." (citations omitted)); see *Sault Ste. Marie Tribe of Chippewa Indians v. United States*, 288 F.3d 910, 915 (6th Cir. 2002) (citations omitted).  To establish standing, plaintiffs must show that they have "suffered a concrete injury to aesthetic, recreational or scientific interests." *Lueckel*,

---

[8]  Plaintiffs allege they own and use land in the "immediate vicinity" of the Academy.  They contend they are requesting relief to protect the "aesthetic values surrounding historic Bethlehem Academy," and that they are "concerned that the proposed transmission line will impair their interests in Bethlehem Academy."

[9] *Pye* found that property owners concerned with the impact of a challenged development on a neighboring historic district asserted claims within the "zone of interests" of the NHPA. *Pye v. United States*, 269 F.3d 459, 469-70 (4th Cir. 2001)(The NHPA "provides for interested members of the public to participate in the permitting process when [historic] areas may be affected by agency action."). However, *Pye* too, involved a scenario factually different from the one Plaintiffs allege, in that the plaintiffs in *Pye* asserted that part of the protected historic site, an African-American cemetery, was "probably" part of their land. *Id.* at 462.

417 F.3d at 537.

Here, Plaintiffs allege and injury that is, in the Court's opinion, arguably insufficient to meet their burden of establishing standing. They have not supplemented the basic factual allegations alleged in their initial motion or complaint. The absence of such a supplementation leaves the court unable to determine accurately whether Plaintiffs have standing to bring this claim.  Because it is unclear, the Court will address the underlying substantive issues.

III.

Federal courts review challenges under the NHPA pursuant to the Administrative Procedure Act ("APA"). 5 U.S.C. § 706. The APA requires a court to set aside an agency action if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C § 706(2)(A).  The question here is more akin to an issue of law: whether the Army improperly defined the "undertaking" or the "APE."

A.

The Army is responsible to assess the impact of its actions under the NHPA only to the extent its actions constitute a federal "undertaking."  The Army's simple grant of an easement over a 10.9 mile portion of federal land fits the plain language of the Advisory Council's definition of "undertaking" as a "a project, activity, or program ... requiring a Federal ... approval." However, the broader 41.9 mile transmission line may not fit within this definition, as it was not a project or activity requiring federal approval. The Army's involvement in the larger project is limited to its approval of a much smaller easement across federal land.

Plaintiffs argue that the Army in this circumstance is required to define its "undertaking" as the entire project. However, the cases, including cases cited by Plaintiffs, suggest that the

Army's minimal involvement is insufficient to create a federal undertaking. *Southwest Williamson County Community Ass'n v. Slater*, 243 F.3d 270 (6th Cir. 2001) (state highway corridor project does not become a federal action by way of involvement of multiple federal agencies); *Macht v. Skinner*, 916 F.2d 13, 19 (D.C. Cir. 1990) (no federal action where the only federal involvement is the issuance of a wetland permit covering 3.58 acres of the 22.5-mile project); *Winnebago Tribe of Nebraska v. Ray*, 621 F.2d 269 (8th Cir. 1980) (Army Corps of Engineers permit to power company allowing its transmission line to cross the Missouri River did not require the Corps to consider the effect of the entire 67-mile project); *Waterworks and Sewer Bd. of Birmingham v. U.S. Dept. of the Army*, 983 F.Supp. 1052, 1072 (N.D. Ala. 1997) (Army Corps did not have to consider the entire water treatment plant project when federal jurisdiction over the project was limited to the intake structure and pipeline crossings, or "a small portion of the entire project").  Plaintiffs attempt to distinguish these cases by arguing that the Army somehow exercises great federal control over this transmission line project.  However, the Army's control here is minimal, just as in the cited cases.

Moreover, the Army's definition of the area of potential effects was not arbitrary, capricious or an abuse of discretion. The 3,000-foot limit was based on the visibility of the transmission line from Army property. That determination fits with the Advisory Council's definition of the APE as "the area or areas within which an undertaking may directly or indirectly cause alterations in the character of historic properties." With the undertaking properly limited to Army land, it is not arbitrary to find that the limits of visibility are the outer limits of the undertaking's indirect effect.  Though Plaintiffs argue that the Army's actions indirectly harmed Bethlehem Academy's land, the Court finds that harm too remote to hold the Federal

Defendants responsible for it.

B.

The Parties each argue that the Sixth Circuit's test for "major federal action," set forth in *Southwest Williamson County Community Ass'n, Inc. v. Slater,* applies here by analogy. 243 F.3d. 270 (6th Cir. 2001). That case concerned whether the involvement of numerous federal agencies in the construction of a state highway corridor turned the state project into "major federal action" for purposes of the National Environmental Protection Act ("NEPA"). *Id.* at 281. Several circuits have referenced the "operational similarity" of the NEPA and NHPA and that "courts treat 'major federal actions' under NEPA similarly to 'federal undertakings' under NHPA." *Karst Envtl. Educ. & Prot., Inc. v. EPA*, 475 F.3d 1291, 1295-96 (D.C. Cir. 2007) citing *Sac & Fox Nation of Mo. v. Norton*, 240 F.3d 1250, 1263 (10th Cir. 2001); *San Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1097 (9th Cir. 2005); see also *Sugarloaf v. FERC*, 959 F.2d 508, 515 (4th Cir. 1992).

*Slater* identified two alternative tests for when a non-federal action becomes a "major federal action" under NEPA:

> 1) when the non-federal project restricts or limits the statutorily prescribed federal decision-makers' choice of reasonable alternatives; or 2) when the federal decision-makers have authority to exercise sufficient control or responsibility over the non-federal project so as to influence the outcome of the project. If either test is satisfied, the non-federal project must be considered a major federal action.

*Slater*, 243 F.3d at 281.[10]

The first *Slater* test refers to occasions where the non-federal entity leaves the federal agency with no alternative other than to approve the project. *Id.* at 282. Here, the Utility

---

[10] For the purposes of this analysis, the Court is assuming the *Slater* test applies. However, there is such minimal control by the Army over the transmission line at issue that the Court finds application of this test debatable.

11

Defendants identified a separate route for their transmission line that would not pass over Fort

Knox, in the event their planned easement was denied by the Army.  Furthermore, the Utility

Defendants did not begin building the line until receiving the necessary approvals from the

Army. Contra *Maryland Conservation Council, Inc. v. Gilchrist*, 808 F.2d 1039 (4th Cir. 1986).

Thus, no convincing evidence suggests that the Utility Defendants somehow limited the Army's

decision-making options.

*Slater's* second test addresses scenarios where federal control is sufficiently widespread

to influence the outcome of the project.  Here, the extent of the Army's control over the

transmission line was its ability to grant or deny an easement.  It did not approve the line, fund

the line or determine the route of the line on Plaintiffs' property.  In contrast, the federal

involvement over the road project in Slater – which the Sixth Circuit decided was not "sufficient

control" under the second test – involved substantially more federal decision-making, including

31 alleged instances of federal control and the required approval of four different federal entities.

*Slater*, 243 F.3d 270, 276.  This Court finds that the Army's involvement in the Utility

Defendants' 41.9 mile transmission line was minimal.  To find that the grant of an easement over

federal land serves to federalize an otherwise private project, is both contrary to the weight of the

case law and to the Court's reasoned judgment.

Finally, the policy implications of a broader definition of "federal undertaking" are

significant.  To hold the federal government responsible for reviewing private projects where the

extent of its control was to allow utility lines to cross its land, would create federal control over

private projects which NHPA does not envision.  To do so could create an incentive for the

government to refuse such requests, thus unnecessarily increasing costs and decreasing

12

efficiency for private projects.  In the alternative, the federal government could choose to undertake extensive and lengthy reviews of projects with little federal involvement, all of which would result in additional and unnecessary expense to the nation's taxpayers.

For the foregoing reasons, the Court concludes that the Federal Defendants' decision to limit the scope of their NHPA review to the impact of its easement over 10.9 miles of federal property was correct as a matter of law and does not constitute an arbitrary or capricious action, or an abuse of its discretion.

The Court will issue an order consistent with this Memorandum Opinion.

cc:     Counsel of Record